**Loyd Byron HOPKINS**

v.

**Richard LAPCHICK, et al.**

Civil No. S 96–3680.

United States District Court,
D. Maryland.

Feb. 19, 1997.

David L. Jacobson, Jennifer Conron Jackson, Blades & Rosenfeld, P.A., Baltimore, MD, for Plaintiff.

Douglas D. Connah, Jr., Venable, Baetjer and Howard, Baltimore, MD, for Defendants Richard Lapchick, The Sporting News, The Times Mirror Co.

Mary R. Craig, Doyle & Craig, Baltimore, MD, for Defendant The Time and News Publishing Co.

## MEMORANDUM OPINION

SMALKIN, District Judge.

This is a diversity case, asserting claims for defamation against various defendants. The plaintiff, a black attorney, was court–appointed to defend a young white man who was criminally prosecuted for an assault and battery that he and several other young whites allegedly committed upon a black student athlete in rural Maryland. The case— before, during, and after the criminal trial— attracted a large amount of media attention. The plaintiff was successful in garnering an acquittal for his client. In the wake of that acquittal, the defendant Lapchick wrote, and the other defendants published, an article that, the plaintiff claims, defamed him. The article is attached hereto.

The defendants have moved for dismissal, and the plaintiff opposes those motions. In that the resolution of the present motions is not dependent upon any factual determination, but solely upon the Court's reading of the publication in question as a matter of law, as discussed below, there is no need for discovery, see Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and the Court has, after notice, treated the motions to dismiss as ones for summary judgment. No oral hearing is needed. Local Rule 105.6, D.Md.

Under settled Maryland law:

> the trial judge initially has the duty to determine whether a statement is capable of conveying a defamatory meaning. [Citations omitted.] Should the judge find that the publication is amphibolous [sic] in that it is capable of both defamatory and non-defamatory meanings, the resolution of the question must be put to the jury.

*Embrey v. Holly*, 48 Md.App. 571, 581, 429 A.2d 251 (1981), *aff'd. in part, rev'd. in part on other grds.*, 293 Md. 128, 442 A.2d 966 (1982).

In this case, plaintiff claims there are nine factual inaccuracies in the article's reporting of the judicial proceedings, which amount to defamation of him. The Court will address them, first, *seriatim* and, then, in combination, in fulfilling its gatekeeper function under *Embrey*, one which, the Court notes, does not call for any resolution of disputed fact within the meaning of Federal Civil Rule 56.

■ The plaintiff first claims that the article falsely reports that tensions from an Annapolis Klan rally spilled over into Thurmont. Whether they did or not is irrelevant here, as this allegedly erroneous report is not possibly capable of defaming plaintiff, who simply played no role in such goings–on.

■ The plaintiff next claims that the article falsely reports certain remarks of a racial nature made by the victim of the assault, Watson. Again, this does not reflect in any

way any defamatory meaning as far as Hopkins is concerned.

The third error pointed out is the report that the assailants denied having made certain remarks. Plaintiff states that they could not have denied the remarks at trial, as they did not testify. Whether or not they denied the remarks is again quite irrelevant to the issue of whether the article defamed Hopkins.

■ The fourth error pointed out is that the article falsely reports that witnesses, in addition to a videotape, corroborated Watson's version of the beating. Again, whether or not the evidence was corroborative of the views of assailant or victim is quite beside the point from the standpoint of whether Mr. Hopkins was defamed.

■ Fifth, the plaintiff claims that the article falsely reports that the case was "an easy one for [the victim, and by implication the prosecution] to win from all vantage points." Beside the fact that this is obviously a non-actionable expression of opinion under well–settled First Amendment law, *see Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40, 94 S.Ct. 2997, 3006–07, 41 L.Ed.2d 789 (1974), the import of the statement is that the plaintiff is a good lawyer, not a bad one, having won a case that was viewed as a lead–pipe cinch for the prosecution. Thus, it is incapable of carrying a defamatory meaning as to the plaintiff.

■ Sixth, the plaintiff points to the statement that "... signs began to appear. An all white jury was seated." Whether, and what, signs appeared is a matter of opinion, and there is no question that all the jurors were white. The article neither claims nor implies that plaintiff so engineered the jury selection process as to exclude blacks, whether deliberately or not. Thus, there is simply no defamation of the plaintiff.

■ Seventh, the plaintiff points to the observation that "[t]he defense strategy was obvious." Again, this is so clearly a protected expression of opinion that no further discussion is needed.

For his eighth contention, plaintiff claims that the article falsely reported that he "called Watson a racist." The plaintiff never called the victim a racist, in those exact words. This statement does sufficiently relate to plaintiff as to require further discussion, which will be had *post.*

■ Finally, plaintiff claims that the article falsely reported that Watson cringed in disbelief at what he was hearing. Plaintiff does not claim that Watson did not cringe, but only that he did not cringe in disbelief at being called a racist, as plaintiff never called him a racist. The difficulty for plaintiff is that he does not set forth the entire sentence preceding the "cringing" report. That sentence states, "The black defense lawyer [plaintiff] called Watson a racist and claimed that he provoked the attack against the three white men." Plaintiff does *not* claim that he did not put it to Watson in court that he provoked the attack. Thus, in that plaintiff does not deny the truth of at least part of what allegedly made Watson cringe, there is no defamatory content to the cringing report.

The Court returns to the allegedly falsely reported fact that plaintiff called Watson a racist. First of all, there is a question of opinion involved. That is, in context, the phrase "called Watson a racist" could simply be an expression of the writer's opinion about the purport of plaintiff's comments in closing argument.

The Court does not rest its analysis of the "racist" issue on the foregoing discussion of opinion, however.

■ Maryland law recognizes that a defamation plaintiff has the burden of showing that the allegedly false statement is not "substantially correct." *Batson v. Shiflett*, 325 Md. 684, 726, 602 A.2d 1191 (1992). Unless there is sufficient evidence from which a reasonable fact–finder could find for the plaintiff, by the appropriate proof burden were the case at the directed verdict stage, that the alleged communication is not "substantially correct," summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). As noted above, there is no need for discovery on the issue, as the parties have furnished all relevant materials, including the article and excerpts from the transcript of

the trial, and the plaintiff has briefed the issue.

In *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516–17, 111 S.Ct. 2419, 2432–33, 115 L.Ed.2d 447 (1991), the Supreme Court laid out a broad–ranging review of defamation law's recognition of the idea that a communication is not actionable if its "substance, ... gist, ... [or] sting ... be justified." 501 U.S. at 517, 111 S.Ct. at 2433. The Court went on to give an alternative test, *viz.*, whether the statement "would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* In some cases, as in *Batson, supra,* this inquiry might generate a jury issue, but not so here.

When the transcript of the plaintiff's closing argument is examined, the following excerpts are found:

> Mr. Watson then takes it upon himself, I guess, to be the police, being the race police. He's going to go up to Mr. Mark Boone [plaintiff's client] and find out, you know, why are you talking to me like that? He's in Mark Boone's face. He comes up to Mark Boone, he is in his face, menacing him.
>
> There's nobody that the State presented, and there's no evidence that anybody heard this word, except for Mr. Watson, and he's acting like it was, you know, hurled in this loud, menacing manner. You nigger, I'm going to get you, nigger. It never happened. Never happened. No one hears it, it never happened. I guarantee you, ladies and gentlemen of the jury, if that word had been uttered, somebody besides Mr. Watson would have heard it. He's lying. It's as simple as that. He is lying.
>
> The State is essentially saying to you that they don't need to prove that Mark Boone had any racial animus or hostility towards Mr. Watson because the evidence of Mr. Watson—I mean Mr. Mark Boone's racial hostility and animus is the fact that he's a white man from Thurmont. That's the only evidence presented here today. They certainly didn't present anything else to you. The only thing that's incriminating about mark that the State is using is his (inaudible). I submit—stand up, Mark—I submit to you, ladies and gentlemen of the

jury, there is nothing wrong with somebody being white and from Thurmont. That is not a crime. Moreover, it is not a crime for a white person from Thurmont to get into an argument with a black person. That is all Mark Boone did that night. That is it.

> Therefore, the State's case is very simple. It is altercation, black victim, white defendant from Thurmont, ergo, racial crime, and the incident is racial in nature and character. Now, this is nothing more than a pathetic attempt to use Mark's skin color to convict him.

TR. (Pltf.'s Opp. Ex. C) at 62–66, *passim.*

What clearly emerges from this argument is that Mr. Hopkins accused Mr. Watson of inventing a story that framed Mr. Boone on a charge of racial assault, having fabricated the story that Mr. Boone acted as a racist. The *Masson* hypothetical reader of such closing argument would conclude that Mr. Hopkins had thus accused Watson of an act itself of a decidedly racist nature, *viz.*, fabricating a story about someone else's racism and participating in a scheme to convict him criminally only on account of his race. The "substance, gist, and sting" of the report that Hopkins called Watson a racist are, thus, justified by Hopkins' own closing argument. He might not have used the word *racist* explicitly, but his argument certainly implied that Mr. Watson was motivated by racial concerns to accuse Boone falsely of a racial crime. Thus, under the Maryland and Supreme Court authorities cited, there is no case made out for defamation from the author's use of the word *racist,* even though Mr. Hopkins did not use that word expressly.

Finally, taking the article as a whole, it is not capable of any meaning defamatory to the plaintiff in his personal or professional capacity. Quite to the contrary, it paints him as a skillful lawyer who was able to turn a strong prosecution case on its ear. Unfortunately, race undoubtedly played a part in the perceptions that all parties, attorneys, and observers brought to and carried away from the criminal case, and the article in question, not having been written in isolation from that reality, reports it. It is not, however, so defamatory, taken in its allegedly erroneous

parts or as a whole, as to be actionable under Maryland law.

For the stated reasons, an Order will be entered separately that grants the dispositive motions of all defendants.

### JUDGMENT ORDER

For the reasons stated in a Memorandum Opinion issued herewith, it is, by the Court, this 19th day of February, 1997, ORDERED and ADJUDGED:

1. That the motions of all defendants to dismiss, treated as motions for summary judgment, BE, and they hereby ARE, GRANTED;

2. That judgment BE, and it hereby IS, ENTERED in favor of all defendants, against the plaintiff, with costs.